**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **BRUCE COPELAND,** | § | |
| **Plaintiff,** | § | |
| **vs.** | § | **Civil Action No. 3:16-CV-726-L** |
| | § | |
| **MICHAEL W. MINTON, Individually** | § | |
| **and THE LAW OFFICES OF** | § | |
| **MICHAEL W. MINTON** | § | |
| **Defendants.** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**

Pursuant to the order of reference dated September 19, 2016 (doc. 17), before the Court is *Defendants' Amended Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction, Alternative Rule 12(b)(6) Motion to Dismiss for Failing to State Claims on Which Relief May be Granted, and Rule 11(c) Motion for Sanctions*, filed July 12, 2016 (doc. 13). Based on the relevant filings and applicable law, the defendants' motion to dismiss should be **GRANTED** ,and their motion for sanctions should be **DENIED**.

## I. BACKGROUND

On March 15, 2016, Bruce D. Copeland (Plaintiff) filed this *pro se* diversity case against attorney Michael W. Minton (Attorney) in his individual capacity and The Law Offices of Michael W. Minton, PLLC (Law Firm) (collectively Defendants). (doc. 3.) He alleges tortious interference with an existing contract, defamation, and slander. (doc. 12 at 7.)[1]

On December 26, 2015, a tornado hit several cities in Texas. (*Id.* at 4.) As a result of the storm, Paul Walker,[2] Paul Scott, and Jacqueline Scott (Policyholders) suffered "tremendous damage"

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[2] Plaintiff identified this individual as Paul Walker in his amended complaint, but he is identified as Dennis Walker in Defendants' brief. (*See* docs. 12 at 4; 14 at 1.)

to their property, which was insured by National Lloyds Insurance Company (National Lloyds). (*Id.* at 4-5.) On February 10, 2016, National Lloyds invoked the appraisal clause in Policyholders' insurance contract, and selected Paul Poncio of Accurate (First Appraiser) as its appraiser. (*Id.*)

Policyholders hired Plaintiff as their appraiser on February 20, 2016. (*Id.*) Plaintiff requested a disclosure statement, pursuant to the Texas Windstorm Appraisal and Mediation Process, from First Appraiser "to ensure there was no conflict of interest that would create an issue for [him] to serve as [National Lloyd's] appraiser." (*Id.*) On February 22, 2016, First Appraiser notified Plaintiff that Mark Fricker (Second Appraiser) would be the appraiser on Policyholders' claim. (*Id.*) First Appraiser informed Plaintiff on February 23, 2016, that the Texas Windstorm Appraisal and Mediation Process did not apply. (*Id.*) That same day, Plaintiff asserted that the Texas Windstorm Appraisal and Mediation Process did apply and again requested First Appraiser's disclosure. (*Id.*) Plaintiff also notified First Appraiser that if he could not accept the appointment, it would be left to National Lloyds to appoint his replacement. (*Id.*) Plaintiff was then notified by National Lloyds of Second Appraiser's appointment. (*Id.*)

On February 24, 2016, Plaintiff requested a disclosure from Second Appraiser, who did not respond to Plaintiff's email. (*Id.* at 5-6.) On March 9, 2016, Plaintiff emailed Second Appraiser and stated "that his failure to comply with the Texas Department of Insurance Code [had] . . . caused [Policyholders] to suffer financial hardship." (*Id.*) Plaintiff then informed Second Appraiser that "he would move with a department of insurance complaint if he could not get the required information." (*Id.*) Second Appraiser did not respond to Plaintiff's email. (*Id.*)

On March 9, 2016, Plaintiff received "a letter from [Attorney] basically slandering [him], and literally notifying the policyholders that he [was] going to send [Second Appraiser] to the house and

they must now comply with his rules not those set by the State of Texas." (*Id.*) According to Plaintiff, Attorney's "notice violate[d] Texas Department of Insurance Code by demanding the policyholders meet with the National Lloyds appointed appraiser without their appointed appraiser present" and was an attempt to "strong arm" Policyholders. (*Id.*) "[Attorney's] written notice prompted this complaint." (*Id.*)

On April 14, 2016, Defendants filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6). (*See* docs. 7-9.) Plaintiff did not respond to Defendants' motion to dismiss. On June 23, 2016, the district court issued an order directing Plaintiff to file an amended complaint to address specific pleading defects.[3] (doc. 11.) Plaintiff filed an amended complaint on July 7, 2016.[4] (doc. 12.) On July 13, 2016, Defendants again moved to dismiss and for sanctions.[5] (docs. 13-15.) Plaintiff did not respond, and the motion is now ripe for recommendation.

## II. RULE 12(b)(1) MOTION

Defendants move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. (docs. 13 at 2; 14 at 1.)

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by

---

[3] The district court noted, in part:

> Plaintiff contends that this court has subject matter jurisdiction over this action because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000 pursuant to 28 U.S.C. § 1332(a)(1); however, Plaintiff fails to allege properly his citizenship and that of others. The court, therefore, cannot rule on Defendants' Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter [Jurisdiction].

(doc. 11 at 1.)

[4] Although Plaintiff's original complaint had various exhibits attached to it (*see* doc. 3 at 9-103), those attachments were not included with his amended complaint (*see* doc. 12).

[5] The earlier motion to dismiss was denied as moot on September 2, 2016. (doc. 16.)

Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

**A. Legal Standard**

A Rule 12(b)(1) motion "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506-07 (2006). A court must dismiss the action if it determines that it lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A dismissal under Rule 12(b)(1) "is not a determination of the merits," and it "does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.* Accordingly, considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id*.

A district court may dismiss for lack of subject-matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (en banc). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject-matter jurisdiction. *See*

*Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998). If sufficient, those allegations alone provide jurisdiction. *Id*. Facial attacks are usually made early in the proceedings. *Id.* "A facial attack requires the court merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction" by examining the allegations in the complaint, which are presumed to be true. *Rodriguez v. Tex. Comm'n on the Arts*, 992 F. Supp. 876, 878 (N.D. Tex. 1998) (citations omitted). If the defendant supports the motion with evidence, however, then the attack is "factual" and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413. A factual attack may occur at any stage of the proceedings. *Menchaca v. Chrysler Credit Corp*., 613 F.2d 507, 511 (5th Cir. 1980). Regardless of the nature of attack, the party asserting federal jurisdiction continually carries the burden of proof to show it exists. *Ramming*, 281 F.3d at 161.

Defendants rely solely on Plaintiff's complaint to support their Rule 12(b)(1) motion to dismiss. (*See* docs. 13, 14.) Accordingly, their motion presents a facial attack that does not require the resolution of factual matters outside the pleadings.[6] *See Williamson*, 645 F.2d at 412-13.

**B. Diversity Jurisdiction**

Plaintiff's amended complaint alleges subject matter jurisdiction based on diversity of citizenship. (doc. 12 at 4.)

Diversity jurisdiction is proper only when complete diversity exists between the parties and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). "Complete diversity" means that a plaintiff may not share citizenship with any

[6] Although Defendants submitted an appendix with their motion, it appears to relate only to their request for sanctions. (*See* doc. 14.)

defendant. *Whalen v. Carter*, 954 F.2d 1087, 1094 (5th Cir. 1992). A party asserting diversity jurisdiction must "distinctly and affirmatively" allege the citizenship of the parties. *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citing *McGovern v. Am. Airlines, Inc*., 511 F.2d 803, 805 (5th Cir. 1991)). It is a well-established legal principle that "[c]itizenship and residency are not synonymous." *Parker v. Overman*, 59 U.S. 137, 141 (1855) (internal quotation marks omitted). "For diversity purposes, citizenship means domicile; mere residence in the State is not sufficient." *Mas v. Perry,* 489 F.2d 1396, 1399 (5th Cir. 1974); *accord Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc*., 485 F.3d 793, 799 (5th Cir. 2007). "Domicile requires residence in [a] state and an *intent to remain in the state*." *Preston*, 485 F.3d at 798 (emphasis added) (citing *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)); *see Coury v. Prot*, 85 F.3d 244, 250 (5th Cir. 1996) (holding that "change in domicile typically requires only the concurrence of: (1) physical presence at the new location and (2) an intention to remain there indefinitely . . . or, as some courts articulate it, the absence of any intention to go elsewhere").

A corporation is a citizen of the state in which it was incorporated and the state in which it has its principal place of business. *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, LLC*, 757 F.3d 481, 483 (5th Cir. 2014); 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."). Additionally, "[t]he citizenship of a limited partnership is based upon the citizenship of each of its partners." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990) (holding that the citizenship of an unincorporated entity or association, such as a partnership, is based upon the citizenship of each of its members)). Likewise, the citizenship of a limited liability company "is

determined by the citizenship of all of its members." *Id.* at 1080. "These rules are straightforward, and the law demands strict adherence to them." *Getty Oil Corp.*, 841 F.2d at 1259 (noting the "importance of clear, distinct, and precise affirmative jurisdictional allegations").

"[T]he basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Illinois Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n.2 (5th Cir. 1983) (citation and internal quotation marks omitted). As noted by the Fifth Circuit:

> "The burden of proving that complete diversity exists rests upon the party who seeks to invoke the court's diversity jurisdiction." *Getty Oil*, 841 F.2d at 1259; *see McGovern v. American Airlines, Inc.*, 511 F.2d 653, 654 (5th Cir.1975) ("The burden is on a plaintiff to allege and invoke jurisdiction."). "When jurisdiction depends on citizenship, citizenship should be 'distinctly and affirmatively alleged.' " *McGovern*, 511 F.2d at 654 (quoting 2A Moore's Federal Practice ¶ 8.10, at 1662); *see also Powell v. Abney*, 83 F.R.D. 482, 487 (S.D.Tex.1979) ("In invoking diversity jurisdiction, the plaintiff's complaint must specifically allege each party's citizenship and these allegations must show that the plaintiff and defendant are citizens of different states."). *Failure adequately to allege the basis for diversity jurisdiction mandates dismissal. Patterson v. Patterson*, 808 F.2d 357, 357 (5th Cir.1986); *McGovern*, 511 F.2d at 654.

*Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 804-05 (5th Cir. 1991) (emphasis added).

Here, as the party seeking to invoke diversity jurisdiction, the obligation was on Plaintiff to distinctly and affirmatively allege the citizenship of all parties, including himself. His amended complaint does not allege the citizenship of the parties, however. (*See* doc. 12 at 3-4.) Plaintiff alleges only that he is "a resident of the State of Oklahoma," "resides" and "lives" in Oklahoma, pays property taxes in Oklahoma, files tax disputes with the Oklahoma IRS office, has an Oklahoma drivers license, and maintains his "home address" in Oklahoma. (*Id.*) Additionally, he alleges that he has moved around the country since 2009, including working in the Dallas, Chicago, Raleigh, and San Francisco Bay areas, and that he is "currently working in the Los Angeles area." (*Id.* at 3.) Even if

he has maintained a residence of some type in Oklahoma since 2009, he does not distinctly and affirmatively allege that he is a citizen of Oklahoma (or any other state) or a domiciliary of the state. At most, he appears to allege residency in Oklahoma. *See Parker*, 59 U.S. at 141 (noting that citizenship and residency are not synonymous).

Similarly, Plaintiff only alleges that Attorney has a residence and a business address in Texas, but does not distinctly and affirmatively allege that he is a citizen of Texas.[7] (*See id.* at 3-4.) Additionally, because he has not alleged the citizenship of Attorney, Plaintiff has not alleged the citizenship of Law Firm, Attorney's limited liability company. *See Harvey*, 542 F.3d at 1080 (noting that the citizenship of a limited liability company "is determined by the citizenship of all of its members"). At most, Plaintiff has alleged that Attorney is a resident of Texas.

As noted, Plaintiff's obligation to distinctly and affirmatively allege the citizenship of the parties "cannot be established argumentatively or by mere inference" and "strict adherence" to the jurisdictional rules are required, even by a *pro se* plaintiff. *Getty Oil*, 841 F.2d at 1259 (citing *Illinois Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n.2 (5th Cir. 1983)). Because Plaintiff has failed to distinctly and affirmatively allege the citizenship of the parties, he has failed to show that diversity jurisdiction exists over this action.

Plaintiff's amended complaint does not sufficiently allege a basis for the exercise of subject matter jurisdiction over this case based on diversity of citizenship.[8] Defendants' Rule 12(b)(1) motion

---

[7] Plaintiff also references records with the State Bar of Texas to establish that Attorney is "domiciled" in Texas. (doc. 12 at 2) ("[Plaintiff] alleges and believes the documents filed with the Texas Bar Association estblishes an official record. This official record ***filed*** by [Attorney] on behalf of [Law Firm] states that [Attorney] is domiciled in the State of Texas with a principle business address in the City of Fort Worth."). Although this record may show a current mailing address for Attorney, Plaintiff does not allege that this record shows Attorney's intent to remain in Texas or that he is a citizen of the state.

[8] Plaintiff does not allege federal question jurisdiction, and the face of his amended complaint only identifies state causes of action. (*See* doc. 12.)

to dismiss should be **GRANTED**.

## III. RULE 12(b)(6) MOTION

To the extent that subject matter jurisdiction exists, Defendants move to dismiss Plaintiff's claims under Rule 12(b)(6). (doc. 14.)[9]

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). "Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Likewise, documents "attache[d] to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his or her] claim[s]." *Collins*, 224 F.3d at 499 (citation omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Here, Defendants do not rely on any evidence outside of the pleadings. (*See* doc. 14.) Conversion of Defendants' motion to dismiss into a motion for summary judgment is therefore unnecessary. *See Collins*, 224 F.3d at 499; *Katrina Canal Breaches Litig.*, 495

---

[9] Under § 1653, "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. The Fifth Circuit has observed that "§ 1653 should be liberally construed to allow a party to cure technical defects, including the failure to specifically allege the citizenship of the parties." *Menedez v. Wal-Mart Stores, Inc.*, 364 F. App'x 62, 66 (5th Cir. 2010) (per curiam). On June 23, 2016, the district court ordered Plaintiff to cure the defects identified in its order regarding citizenship. (doc. 11 at 2.) To the extent that the failure of Plaintiff's amended complaint to allege the parties' citizenship is a technical defect that can be cured, or that Plaintiff's amended complaint can be liberally construed as alleging full diversity under 28 U.S.C. § 1332, Defendants' Rule 12(b)(6) arguments are also considered.

F.3d at 205.

Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is *plausible on its face*." *Id*. at 570 (emphasis added).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678 (noting that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense”).

**A. Tortious Interference with a Contract**

Defendants move to dismiss Plaintiff’s claim for tortious interference with a contract because “the amended complaint . . . contain[s] nothing more than recitations of the elements of the cause of action and legal conclusions couched as factual allegations.” (doc. 14 at 3.)

To establish tortious interference with a contract under Texas law,[10] a plaintiff must plead: (1) that a contract subject to interference existed; (2) that the alleged act of interference was willful and intentional; (3) that the willful and intentional act proximately caused damage; and (4) that actual damage or loss occurred. *Amigo Broad., LP v. Spanish Broad. Sys., Inc*., 521 F.3d 472, 489 (5th Cir. 2008) (citing *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)). A plaintiff must also allege “the defendant[s] took an active part in persuading a party to a contract to breach [the contract].” *Davis v. HydPro, Inc.*, 839 S.W.2d 137, 139 (Tex. App.—Eastland 1992, writ denied) (quoting *Texaco, Inc. v. Pennzoil Co.*, 729 S.W.2d 768, 803 (Tex. App.—Houston [1st Dist.] 1987, writ ref’d n.r.e.), *cert. dism’d*, 485 U.S. 994 (1988)). Additionally, a plaintiff “must plead facts that identify a specific customer with whom it had a *specific contract* with which [the defendant] interfered.” *Staton Holdings, Inc. v. Russell Athletic, Inc*., No. 3:09-CV-0419-D, 2009 WL 4016117, at *5 (N.D. Tex. Nov. 20, 2009) (emphasis added).

Here, the allegedly tortious interference occurred when Plaintiff received “a letter [on March

[10] “It is a long-recognized principle that federal courts sitting in diversity cases ‘apply state substantive law and federal procedural law.’” *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). In this diversity case, the majority of the events giving rise to the claims are alleged to have occurred in Texas, and the parties do not dispute that Texas law applies. *See De Aguilar v. Boeing Co*., 47 F.3d 1404, 1413 (5th Cir. 1995) (quoting *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984)) (“[T]he law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue.”).

9, 2016] from [Attorney] basically slandering [him], and literally notifying the policyholders that he is going to send [Second Appraiser] to the house and they must now comply with his rules not those set by the State of Texas." (doc. 12 at 6, 7.) Even assuming, without deciding, that Attorney's letter constitutes an interference that was "willful and intentional," Plaintiff does not allege that Policyholders' breached their agreement with him, that the letter was the proximate cause of that breach, or that actual damage or loss occurred from the breach. At most, he alleges that he disagreed with Attorney regarding provisions of the insurance code and the applicability of the Texas Windstorm Appraisal and Mediation Program, and accuses him of "strong arm" tactics in dealing with Policyholders. (*See id.* at 6.) Accordingly, Plaintiff has not sufficiently alleged the necessary elements for a tortious interference with a contract claim and therefore failed to nudge his claim across the line from conceivable to plausible. *See Twombly*, 550 U.S. at 555. To the extent that subject matter jurisdiction exists, his allegation of tortious interference with a contract should be **DISMISSED** for failure to state a claim.

### B. Defamation and Slander

Defendants also move to dismiss Plaintiff's defamation and slander claim because "the amended complaint does not spell out what statement was made constituting defamation and slander." (doc. 14 at 3.)

Under Texas law, "[d]efamation is a false statement about a person, published to a third party, without legal excuse, which damages the person's reputation." *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1161 (5th Cir. 2006) (citing *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.)). "Defamatory statements are 'published' if they are communicated to a third party capable of understanding their defamatory connotation and in such a way that the third party did so

understand." *Crouch v. J.C Penney Corp., Inc.*, 564 F. Supp. 2d 642, 646 (E.D. Tex. 2008), *aff'd*, 337 F. App'x 399 (5th Cir. 2009) (citing *Austin v. Inet Techs., Inc.*, 118 S.W.3d 491, 496 (Tex. App.—Dallas 2003, no pet.)). "A statement is defamatory if it exposes a person to 'public hatred, contempt or ridicule, or financial injury or if it impeaches any person's honesty, integrity, virtue, or reputation.'" *Shaunfield v. Bank of Am.*, No. 3:12-CV-3859-B, 2013 WL 1846885, at *3 (N.D. Tex. Apr. 24, 2013) (citing *Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 854 (Tex. App.—Dallas 2003, no pet.)); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (West 2011). Generally, a plaintiff who is a private individual (such as Plaintiff in this case) must show that the defendant acted negligently regarding the truth of the defamatory statement at the time that he published it. *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 595-96 (5th Cir. 2007) (citing *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)). Slander is oral defamation. *See Fields v. Keith*, 174 F. Supp. 2d 464, 473 (N.D. Tex. 2001), *aff'd*, 273 F.3d 1099 (5th Cir. 2001) (citations omitted).

Unless the statement is defamatory *per se*, a plaintiff must also prove damages. *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015) (orig. proceeding). Defamation claims are either *per se* or *per quod*. *Id.* at 596 & n.13 (citing *Hancock v. Variyam*, 400 S.W.3d 59, 63 (Tex. 2013); *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 146 & nn.8-9 (Tex. 2014)). Defamation *per se* refers to statements that are so obviously harmful that general damages, such as mental anguish and loss of reputation, are presumed. *Hancock*, 400 S.W.3d at 63-64. Examples of defamation *per se* include (i) accusing someone of a crime, (ii) accusing someone of having a foul or loathsome disease, (iii) accusing someone of serious sexual misconduct, and (iv) disparaging another's fitness to conduct his or her business or trade. *In re Lipsky*, 460 S.W.3d at 596. "[W]hether a statement qualifies as defamation *per se* is generally a question of law." *Id.* at 596.

Here, Plaintiff appears to allege that Defendants' actions were defamation *per se*.[11] (*See* doc. 12 at 7.) According to his amended complaint:

> The document sent [to] everyone involved in this process has caused serious damage to [Plaintiff's] name and reputation. [Attorney] rather than address the Insurance Code as required, openly blamed [Plaintiff] and damaged his good name and reputation. [Attorney's] reckless regard for the truth has caused [Plaintiff] harm and damages. His negligent regard to the truth was confirmed when [Attorney] sent a written letter to all parties knowing it to be false.

(*Id.*) Plaintiff simply alleges in conclusory fashion that Attorney defamed him in a letter. Even accepting all of his allegations about the letter as true and viewing them in the light most favorable to him, however, he still fails to allege facts in support of the letter containing defamatory statements. Additionally, although he also alleges slander, he fails to allege any defamatory statement spoken by Defendants; Plaintiff appears to rely solely on the letter as a basis for both his defamation and slander claims. (*See id.* at 7, 8.) Accordingly, even accepting Plaintiff's well-pleaded facts as true and viewing them in the light most favorable to him, he fails to allege sufficient facts to raise his right to relief above the speculative level. *See Twombly*, 550 U.S. at 555. To the extent that subject matter jurisdiction exists, his defamation and slander claims should therefore be **DISMISSED** for failure to state a claim.

## IV. RULE 11(c) MOTION

Defendants move for sanctions under Rule 11(c) because "[Plaintiff's] original complaint and amended complaint . . . were presented for the improper purpose of harassing the defendants in the course of their representation of National Lloyds." (doc. 14 at 4.)

Rule 11(b) provides that by presenting a filing to a court, attorneys and *pro se* litigants are

[11] Although Plaintiff does not clearly state that he is alleging defamation *per se*, he lists the elements of defamation *per se* in his amended complaint. (*See* doc. 12 at 7-8.)

certifying that to the best of their belief, after reasonable inquiry, (1) the filing is not being presented for an improper purpose, such as harassment, delay, or increasing costs; (2) any claims and/or defenses in the filing are supported by either existing law or by a nonfrivolous argument for changing existing law or establishing new law; and (3) factual contentions have or will likely have evidentiary support. Fed. R. Civ. P. 11(b). The purpose of the rule is to "deter baseless filings in district court," *Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384, 393 (1990), and "to spare innocent parties and overburdened courts from the filing of frivolous lawsuits," *Zuffante v. Stephens*, No. 3:13-CV-1146-B, 2013 WL 4829193, at *1 (N.D. Tex. Sept. 9, 2013) (quoting *Kurkowski v. Volcker*, 819 F.2d 201, 204 (8th Cir. 1987)).

After notice and opportunity to respond, courts finding a Rule 11(b) violation may impose appropriate sanctions. Fed. R. Civ. P. 11(c)(1). These may include monetary and injunctive sanctions, *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359-60 (5th Cir. 1986), and even dismissal, *Bell v. Dunn, Johnston & Brown*, No. 3:10-cv-1-M-BH, 2011 WL 759473, at *3 (N.D. Tex. Feb. 7, 2011) (citing *Jimenez v. Madison Area Technical Coll.*, 321 F.3d 652, 657 (7th Cir. 2003)), *adopted by* 2011 WL 726114 (N.D. Tex. Mar. 1, 2011). Courts have a duty to "impose the least severe sanction adequate" to deter future conduct. *Mendoza v. Lynaugh*, 989 F.2d 191, 196 (5th Cir. 1993) (quoting *Akin v. Q–L Invs., Inc*., 959 F.2d 521, 535 (5th Cir. 1992)); *accord* Fed. R. Civ. P. 11(c)(4). The moving party has the burden to overcome the presumption that pleadings are filed in good faith. *Tompkins v. Cyr*, 202 F.3d 770, 788 (5th Cir. 2000).

Rule 11(c)(2) provides that a motion must be made separately from any other motion and must describe the specific sanctionable conduct. Fed. R. Civ. P. 11(c)(2). The rule contains a safe harbor provision that requires that the motion "be served under Rule 5, but it must not be filed or be presented

to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." *Id.* This requirement is strictly construed and substantial compliance is insufficient. *Morris v. Thaler*, No. 3:12-CV-4916-N, 2013 WL 2383652, at *2 (N.D. Tex. May 31, 2013) (citing *In re Pratt*, 524 F.3d 580, 586-88 (5th Cir. 2008) (addressing "substantially identical" bankruptcy Rule 9011)). Informal notice and opportunity to withdraw is not an adequate substitute for serving a copy of the motion at least twenty-one days before filing the motion with the court. *Pratt*, 524 F.3d at 586-88 (noting courts "have continually held that strict compliance with Rule 11 is mandatory"). A motion for Rule 11 sanctions is appropriately denied when the movant fails to comply with this requirement. *Tompkins*, 202 F.3d at 788. The movant has the burden to show compliance with the safe harbor provision. *See id.*; *see also Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995); *Morris*, 2013 WL 2383652, at *2.

Here, Defendants combined their motion for Rule 11 sanctions with their motion to dismiss. (*See* docs. 13, 14.) The certificates of service for their combined motion and its brief indicate that the documents were served on Plaintiff on July 12, 2016, the same date they were filed. (docs. 13 at 3; 14 at 6.) Although Defendants sent Plaintiff correspondence on April 7, 2016, warning him that they would pursue Rule 11 sanctions, the Fifth Circuit has found that an informal letter does not of itself comply with the service requirements. *See In re Pratt*, 524 F.3d at 586-88; *see, e.g., Bell*, 2011 WL 759473, at *4 (denying a motion for Rule 11 sanctions because the defendant filed its motion for sanctions with a motion for summary judgment in one document and had sent the plaintiff an informal letter warning of its intent to pursue Rule 11 sanctions). Defendants have not shown that they strictly complied with the safe harbor provision, and their motion for sanctions under Rule 11(c)(2) should be **DENIED** on this basis.

## V. OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. A *pro se* plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal. *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at *1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at *1. Nonetheless, a court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiff has amended his complaint once in an attempt to address specific jurisdictional deficiencies, but he has not otherwise amended his complaint since filing this action. It does not appear that he has alleged his best case, or that he has had an opportunity to amend his complaint to state a claim upon which relief can be granted, to extent that jurisdiction exists. He should therefore be accorded an opportunity to amend his complaint to address the jurisdictional deficiencies as well as to state a claim upon which relief can be granted.

## VI. RECOMMENDATION

If Plaintiff does not file an amended complaint that states a claim for relief within the 14 days for objections to this recommendation, or a deadline otherwise set by the Court, Defendants' motion

to dismiss should be **GRANTED**, and the claims against them should be **DISMISSED without prejudice** for lack of subject matter jurisdiction. To the extent that subject-matter jurisdiction exists, Plaintiff's claims against Defendants should be **DISMISSED with prejudice** for failure to state a claim. Defendants' motion for Rule 11 sanctions should be **DENIED**.

If Plaintiff timely files an amended complaint, Defendants' motion to dismiss should be **DENIED as moot**, and the action should be allowed to proceed on the amended complaint. Defendant's motion for Rule 11 sanctions should be **DENIED**.

**SO RECOMMENDED** on this 29th day of December, 2016.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE